**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JOSEPH BARRETT and JEFFREY PETERSON, on behalf of themselves and others similarly situated, | : : : : | CIVIL ACTION FILE NO. |
| Plaintiffs, | : : | |
| v. | : : | **COMPLAINT – CLASS ACTION** |
| CARGUARD ADMINISTRATION, INC., and VEHICLE PROTECTION SPECIALISTS LLC | : : : : : | **JURY TRIAL DEMANDED** |
| Defendants. | : / | |

Plaintiffs Joseph Barrett ("Mr. Barrett") and Jeffrey Peterson ("Mr. Peterson") (hereinafter referred to as "Plaintiffs"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

## NATURE OF ACTION

1.      As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (July 6, 2020).

2.      This case involves a campaign by Vehicle Protection Specialists LLC ("Vehicle Protection"), a telemarketer retained by CarGuard Administration, Inc. ("CarGuard") to market CarGuard's services through the use of pre-recorded telemarketing calls in plain violation of the TCPA.

3.      Because these calls were transmitted using technology capable of generating thousands of similar calls per day, he sues on behalf of a proposed nationwide class of other persons who received similar calls.

4.      A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

<u>**PARTIES**</u>

5.      Plaintiff Joseph Barrett is an individual citizen of Massachusetts.

6.      Plaintiff Jeffrey Peterson is an individual citizen of New York.

7.      Defendant Carguard Administrations, Inc. is a Kansas corporation. Carguard is registered to do business in the Commonwealth of Massachusetts and has a registered agent of Incorp. Services, Inc., 44 School St., Suite 505, Boston, MA 02018.

8.      Defendant Vehicle Protection Specialists LLC is a Nevada limited liability company with its principal place of business in Irvine, CA 92618. Vehicle Protection is registered to do business in the Commonwealth of Massachusetts and has a registered agent of Business Filings Incorporated, 155 Federal St., Suite 700 in Boston, MA 02110.

## JURISDICTION AND VENUE

9.      This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

10.     This Court has personal specific jurisdiction over CarGuard because it services the contracts offered on the calls by Vehicle Protection, including on the calls to the Plaintiff. Furthermore, CarGuard sent the Plaintiff Barrett a CarGuard contract following calls by Vehicle Protection

11.     Vehicle Protection is subject to specific personal jurisdiction because the companies made telemarketing calls to the Plaintiffs by directing their conduct into this District.

12.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because as calls were made into this District.

## TCPA BACKGROUND

Calls Made Using a Pre-Recorded Message

13.     The TCPA regulates, among other things, the use of a pre-recorded message to make calls or send pre-recorded calls. *See* 47 U.S.C. § 227, *et seq*.; *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

14.     Specifically, the TCPA prohibits the use of a pre-recorded message to a wireless number in the absence of an emergency or the prior express written consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1831 (F.C.C. 2012).

15.     "[T]elemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."  47 C.F.R. § 64.1200(f)(12).

16.     "[P]rior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."  47 C.F.R. § 64.1200(f)(8).

The National Do Not Call Registry

17.     Second, § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

18.     In this rulemaking proceeding, the FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific 'do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

19.     Pursuant to this statutory mandate, the FCC issued two regulations, only one of which is relevant here.

20.     The relevant regulation under § 227(c) established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer*

4

*Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

21.    The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

22.    However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

23.    A violation of § 227(c) through 47 C.F.R. § 64.1200(d) carries statutory damages of $500 to $1,500 per call.

24.    The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

25.    A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

26.    The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## FACTUAL ALLEGATIONS

27.    Defendant CarGuard is a "person" as the term is defined by 47 U.S.C. § 153(39).

28.     Defendant Vehicle Protection is a "person" as the term is defined by 47 U.S.C. § 153(39).

29.     At no point have the Plaintiffs sought out or solicited information regarding Defendant CarGuard's services prior to receiving the pre-recorded calls at issue.

Calls to Plaintiff Barrett

30.     Plaintiff Barrett's telephone number, 781-XXX-3511, is registered to a cellular telephone service.

31.     Plaintiff Barrett's telephone number is used for residential, non-commercial purposes.

32.     Plaintiff Barrett's telephone number was on the National Do Not Call Registry for more than 31 days prior to the receipt of the first call advertising CarGuard's goods or services.

33.     Plaintiff Barrett received several telemarketing calls promoting CarGuard's goods or services, including on May 21, 22 and 29, 2020.

34.     When a call was answered, unlike on a normal call, no one promptly announced herself to Plaintiff. Instead, Plaintiff heard an unnatural click and pause.

35.     The pause signifies the algorithm of the predictive dialer operating.  The predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

36.     The dialing system used also has the capacity to store telephone numbers in a database and dial them automatically with no human intervention.

37.     Loading a list of telephone numbers into the dialing system and pressing a single command does this.

38.     The calls then played a pre-recorded message.

39.     The pre-recorded message stated that it was "Lisa" with the "Warranty Department" calling.

40.     The pre-recorded message did not further identify the caller.

41.     The May 21, 2020 call disconnected shortly after he picked up.

42.     When the same call came in the next day with a pre-recorded message, the Plaintiff engaged the telemarketer to learn their identity.

43.     The call promoted CarGuard's services.

44.     The caller attempted to sell the Plaintiff CarGuard services.

45.     Mr. Barrett eventually received a "Purchase Confirmation" from Vehicle Protection.

46.     This confirmation came from an e-mail address, @vehicleprotectiospecialist.com.

47.     That domain is owned by Vehicle Protection.

48.     The calls received by Plaintiff were sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services as it seeks to have him sign up for CarGuard's services.  This message therefore qualified as telemarketing.  47 C.F.R. § 64.1200(f)(12).

Calls to Plaintiff Peterson

49.     Plaintiff Peterson's telephone number, 646-XXX-9260, is registered to a cellular telephone service.

50.     Plaintiff Peterson's telephone number is used for residential, non-commercial purposes.

51.    Plaintiff Peterson's telephone number was on the National Do Not Call Registry for more than 31 days prior to the receipt of the first call advertising CarGuard's goods or services.

52.    Plaintiff Peterson received several telemarketing calls to promote CarGuard's goods or services from Vehicle Protection, including on May 22, multiple calls on June 2 and multiple calls on June 3, 2020.

53.    When a call was answered, unlike on a normal call, no one promptly announced herself to Plaintiff. Instead, Plaintiff heard an unnatural click and pause.

54.    The pause signifies the algorithm of the predictive dialer operating. The predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

55.    The dialing system used also has the capacity to store telephone numbers in a database and dial them automatically with no human intervention.

56.    Loading a list of telephone numbers into the dialing system and pressing a single command does this.

57.    When a call was answered, unlike on a normal call, no one promptly announced herself to Plaintiff. Instead, Plaintiff heard an unnatural click and pause.

58.    The pause signifies the algorithm of the predictive dialer operating. The predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

59.    The dialing system used also has the capacity to store telephone numbers in a database and dial them automatically with no human intervention.

60.     Loading a list of telephone numbers into the dialing system and pressing a single command does this.

61.     The calls then played a pre-recorded message.

62.     The pre-recorded message did not identify the caller.

63.     The Plaintiff ignored the calls until June 3, 2020.

64.     On June 3, 2020, the Plaintiff engaged the telemarketer to learn their identity.

65.     The call promoted CarGuard's services.

66.     The caller attempted to sell the Plaintiff CarGuard services.

67.     Mr. Peterson eventually received a "Purchase Confirmation" from Vehicle Protection.

68.     This confirmation came from an e-mail address, @vehicleprotectiospecialist.com.

69.     That domain is owned by Vehicle Protection.

70.     The calls received by Plaintiff were sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services as it seeks to have him sign up for CarGuard's services.  This message therefore qualified as telemarketing.  47 C.F.R. § 64.1200(f)(12).

### CARGUARD'S LIABILITY FOR THE CALLS AT ISSUE

71.     For twenty-five years the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

72.    On May 9, 2013, the FCC released a Declaratory Ruling holding that a

corporation or other entity that contracts out its telephone marketing "may be held vicariously

liable under federal common law principles of agency for violations of either section 227(b) or

section 227(c) that are committed by third-party telemarketers."[1]

73.    In that ruling, the FCC instructed that sellers such as CarGuard may not avoid

liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing
> activities to unsupervised third parties would leave consumers in many cases
> without an effective remedy for telemarketing intrusions. This would particularly
> be so if the telemarketers were judgment proof, unidentifiable, or located outside
> the United States, as is often the case. Even where third-party telemarketers are
> identifiable, solvent, and amenable to judgment limiting liability to the
> telemarketer that physically places the call would make enforcement in many
> cases substantially more expensive and less efficient, since consumers (or law
> enforcement agencies) would be required to sue each marketer separately in order
> to obtain effective relief. As the FTC noted, because "[s]ellers may have
> thousands of 'independent' marketers, suing one or a few of them is unlikely to
> make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

74.    The May 2013 FCC Ruling held that, even absent evidence of a formal

contractual relationship between the seller and the telemarketer, a seller is liable for

telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.

28 FCC Rcd at 6586 (¶ 34).

75.    Vehicle Protection was contractually required to promote CarGuard products on

their telemarketing calls in order to potentially generate new customers, and did so, as they did

with the Plaintiffs.

---

[1]    *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

76.     CarGuard knew that Vehicle Protection was making pre-recorded telemarketing calls.

77.     In fact, counsel for Mr. Peterson sent CarGuard and Vehicle Protection a letter regarding their conduct on February 7, 2020.

78.     Nonetheless, CarGuard continued its relationship with Vehicle Protection.

79.     In fact, CarGuard continued its relationship with Vehicle Protection despite being sued by Mr. Barrett for violations of the TCPA.

80.     Furthermore, Vehicle Protection has received complaints from the Better Business Bureau:

> Several phone calls a day are coming into my cell phone. I have asked repeatedly for them to STOP calling and to remove the number. They call asking for either an **** **** or a Miss ***** neither of which I am, at that point I ask them to remove the number and am told they will do so, apparently they do not. They are a company based in California and I am in NJ, all the calls come from a NJ area code. I was advised by a "supervisor" who claims she will also take care of it, that in fact the company is from California but the calls are then routed by location to show that same states area code.
>
> ***
>
> I have been receiving robo calls from the company that violate telemarketing laws.

*See* https://www.bbb.org/us/ca/irvine/profile/auto-warranty-plans/vehicle-protection-specialists-llc-1126-172014552/complaints#397797844 (Last Visited August 6, 2020).

81.     Even worse, CarGuard admits that it can't help the called consumer until the consumer finds out the name of the company CarGuard is working with:

> We do not engage in any marketing directly to consumers of any type. Unfortunately, without the identity of the seller there is no way for us to suspend calls. If the customer can let us know who the seller is, we can e-mail them and ask them to stop calling this customer. If the customer can provide us the name of

11

seller, please e-mail it to *****************, and we will contact the seller and ask them to stop calling this customer.

*See* https://www.bbb.org/us/ks/leawood/profile/auto-service-contract-companies/carguard-administration-inc-0674-1000006173/customer-reviews (Last Visited April 15, 2020).

82. CarGuard was knowingly and actively accepting the business that originated through the illegal telemarketing calls through the issuance of insurance policies.

83. CarGuard derived a benefit from its interaction with the Plaintiff Barrett by the issuance of a quote.

84. CarGuard derived a benefit from its interaction with the Plaintiff Peterson by the purchase of a policy.

85. Moreover, CarGuard maintained interim control over Vehicle Protection's actions.

86. For example, CarGuard had absolute control over whether, and under what circumstances, it would accept a customer.

87. Furthermore, CarGuard had day-to-day control over Vehicle Protection's actions, including the ability to prohibit it from using pre-recorded methodology to contact potential customers of CarGuard.

88. CarGuard failed to make such an instruction to Vehicle Protection, and as a result, is liable for Vehicle Protection's conduct.

89. CarGuard also gave interim instructions to Vehicle Protection by providing the volume of calling and leads it would purchase.

90.     CarGuard gave further interim instructions to Vehicle Protection by providing the states that those companies were allowed to make calls into and restricting other states that they could not.

91.     CarGuard knew, or should have known, that Vehicle Protection was generating the leads through conduct that violated the TCPA.

92.     CarGuard has previously received complaints regarding the telemarketing conduct of its third-party vendors.

93.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46).  Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## CLASS ACTION ALLEGATIONS

94.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully stated herein.

95.     Plaintiffs bring this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

96.     Plaintiffs propose the following Class definitions, subject to amendment as appropriate:

**Vehicle Protection Pre-Record Class:** All persons in the United States who, (1) within four years prior to the commencement of this litigation until the class is certified, (2) received one or more calls on their cellular telephone (3) from or on

13

behalf of the Vehicle Protection, (4) sent using the same, or substantially similar, pre-recorded message used to contact the Plaintiff.

**CarGuard Pre-Record Subclass:** All persons in the United States who, (1) within four years prior to the commencement of this litigation until the class is certified  (2) received one or more calls on their cellular telephone (3) from or on behalf of the Vehicle Protection promoting CarGuard goods or services, (4) sent using the same, or substantially similar, pre-recorded message used to contact the Plaintiff.

**Vehicle Protection National Do Not Call Registry Class**: All persons in the United States whose, (1) telephone numbers were on the National Do Not Call Registry for at least 30 days, (2) but received more than one telephone solicitation telemarketing call from or on behalf of the Vehicle Protection, (3) within a 12-month period, (4) from four years prior the filing of the Complaint.

**CarGuard National Do Not Call Registry Subclass:** All persons in the United States whose, (1) telephone numbers were on the National Do Not Call Registry for at least 30 days, (2) but received more than one telephone solicitation telemarketing call from or on behalf of the Vehicle Protection (3) within a 12-month period, (4) that promoted CarGuard services (5) from four years prior the filing of the Complaint.

97.     The Plaintiffs are members of and will fairly and adequately represent and protect the interests of these Classes as they have interests that conflict with any of the class members.

98.     Excluded from the Classes are counsel, the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

99.     Plaintiffs and all members of the Classes have been harmed by the acts of the Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their cell phone battery, and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

100.    This Class Action Complaint seeks injunctive relief and money damages.

101.   The Classes as defined above are identifiable through dialer records, other phone records, and phone number databases.

102.   Plaintiffs do not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds in each class.

103.   The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

104.   Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

105.   There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

106.   There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

(a)  whether a pre-recorded message was used to send calls;

(b)  whether multiple telemarketing telephone calls were made promoting the goods or services to members of the National Do Not Call Registry Classes;

(c)  whether the telemarketing calls at issue were made to Plaintiffs and members of the Classes without first obtaining prior express written consent to make the calls;

(d)  whether Defendants' conduct constitutes a violation of the TCPA; and

(e)  whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

107.   Further, Plaintiffs will fairly and adequately represent and protect the interests of the Classes.  Plaintiffs have no interests which are antagonistic to any member of the Classes.

108.    Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes and have the financial resources to do so.

109.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

110.    The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

**FIRST CAUSE OF ACTION**
**Statutory Violations of the Telephone Consumer Protection Act**
**(47 U.S.C. 227, et seq.) on behalf of the Robocall Classes**

111.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

112.    The Defendants violated the TCPA by sending, or causing to be sent via an agent, pre-recorded calls to the cellular telephones of Plaintiff and members of the Robocall Class using a pre-recorded message without their prior express written consent.

113.    As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and Robocall Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

114.    The Plaintiffs and Robocall Class Members are entitled to an award of treble damages if their actions are found to have been knowing or willful.

115.    Plaintiffs and Robocall Class members are also entitled to and do seek injunctive relief prohibiting the Defendants from using a pre-recorded voice in the future, except for emergency purposes.

**SECOND CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. 227, et seq. and 47 C.F.R. §§ 64.1200(d))**
**on behalf of the National Do Not Call Registry Classes**

116.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

117.    Defendants violated the TCPA and the Regulations by making, or having its agent make, two or more telemarketing pre-recorded calls within a 12-month period on Defendants' behalf to Plaintiffs and the members of the National Do Not Call Registry Class while those persons' phone numbers were registered on the National Do Not Call Registry.

118.    As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and National Do Not Call Registry Class members are entitled to an award of up to $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

119.    Plaintiffs and Class Members are entitled to an award of treble damages if their actions are found to have been knowing or willful.

120.    Plaintiff and National Do Not Call Registry Class members are also entitled to and do seek injunctive relief prohibiting the Defendant from advertising their goods or services,

except for emergency purposes, to any number on the National Do Not Call Registry in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, prays for the following relief:

A.    Injunctive relief prohibiting Defendants from calling telephone numbers advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry or to any cellular telephone numbers using a prerecorded voice in the future;

B.    As a result of Defendants' violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Robocall Class member up to treble damages, as provided by statute, of $1,500 for each and every violation of the TCPA;

C.    As a result of Defendants' willful and/or knowing violations of 47 C.F.R. § 64.1200(d), Plaintiffs seek for himself and each member of the National Do Not Call Registry Class up to treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

D.    An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

E.    Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

PLAINTIFFS,
By their attorneys

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Alex M. Washkowitz
Jeremy Cohen
CW Law Group, P.C.
188 Oaks Road
Framingham, MA 01701
alex@cwlawgrouppc.com

19